**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MARY BETH KNUDSEN,**

                **Plaintiff,**

-vs-                                                      Case No. 6:09-cv-1060-Orl-31GJK

**DAVID HIGGINS and BEN F. JOHNSON,**

                **Defendants.**

_____

# ORDER

This matter comes before the Court without oral argument on the Motion to Dismiss or, in the Alternative, for Summary Judgment (Doc. 40) filed by the Defendants, David Higgins ("Higgins") and Ben F. Johnson ("Johnson"), the response in opposition (Doc. 47) filed by the Plaintiff, Mary Beth Knudsen ("Knudsen"), and the Defendants' reply (Doc. 49).

**I.     Background**

At all times relevant to the instant matter, Higgins was a Volusia County Sheriff's Deputy, and Johnson was the Volusia County Sheriff. The Plaintiff, Mary Beth Knudsen ("Knudsen"), has sued Higgins individually, while Johnson has been sued in his official capacity.

On May 5, 2008, Higgins was dispatched to Knudsen's house in response to a call to the Sheriff's office regarding a domestic dispute. When he arrived, he saw Knudsen at the side door to her neighbor's house, talking to her neighbor. Higgins entered Knudsen's house and spoke with Knudsen's husband, who accused her of having struck him in the head with her car's tailgate hatch. Higgins went outside to speak to Knudsen, who was still near her neighbor's side door. He

told her that he wanted to speak to her. She said "Okay" and began walking in his direction, up her driveway, but did not stop when she reached him. She walked past him, toward the open door to her garage. Higgins grabbed her by the arm and used his leg to sweep her legs out from under her, taking her down to the driveway. Knudsen's nose was broken, apparently as a result of her face hitting the ground, and she suffered injuries to her hip and shoulder, as well as two cracked teeth.

Higgins arrested Knudsen, charging her with domestic violence battery and resisting arrest without violence. Knudsen was transported to a hospital, where her nose was treated and x-rays were taken. Afterward, she was transported to jail. On June 4, 2008, the state's attorney's office dropped the charges.

On June 19, 2009, Knudsen filed suit under 42 U.S.C. § 1983, alleging violations of her constitutional right to be free of illegal searches and seizures (Count I). She also asserts state law claims of battery (Count II), false arrest (Count III), malicious prosecution (Count IV), and intentional infliction of emotional distress (Count V).

**II.      Standards**

    **A.      Summary Judgment**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

The Court must consider all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolve all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir 1994).

### B.     Qualified Immunity

Qualified immunity protects government officials performing discretionary functions from individual liability as long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity is an immunity from suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d

411 (1985). Unless the plaintiff's allegations state a claim of violation of a clearly established constitutional right, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001). Even if the plaintiff's complaint adequately alleges the commission of acts that violated clearly established law, the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in question in fact committed those acts. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the defendants establish this, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id.* The Supreme Court has established a two-part test to determine whether qualified immunity should apply. The court must determine whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2514, 153 L.Ed.2d 666 (2002). This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right. *Gonzalez*, 325 F.3d at 1234. The second prong of the test requires the court to determine whether the right was "clearly established." *Id.* Although it will often be appropriate to consider whether a constitutional violation has been alleged before assessing whether the right at issue is clearly established, the two determinations may be made in either order. *Pearson v. Callahan*, 555 U.S. 223, —, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

### C. False Arrest

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. An arrest is a seizure of the person. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1137 (11th Cir. 2007). A warrantless arrest without probable cause violates the Constitution and provides a basis for a Section 1983 claim, but the existence of probable cause at the time of the arrest constitutes an absolute bar to a Section 1983 action for false arrest. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009). In addition, qualified immunity protects officers who reasonably but mistakenly conclude that probable cause is present. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1167 (11th Cir. 2009). Whether a particular set of facts gives rise to probable cause or arguable cause for arrest depends on the elements of the crime. *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004). Where the facts are undisputed, whether probable cause existed is a question of law. *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990).

### D. Excessive Force

The Fourth Amendment provides the right to be "free from the use of excessive force in the course of an investigatory stop or other 'seizure' of the person." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir.2004); *see also* U.S. Const. amend. IV. To establish an excessive force claim, a plaintiff must first show that she was "seized" within the meaning of the Fourth Amendment. *See Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir.2003). A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989) (emphasis in original).

If that showing is made, the plaintiff must then establish that the force used to effectuate the seizure was unreasonable. *See Brower,* 489 U.S. at 599, 109 S.Ct. at 1382-83. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger*, 381 F.3d at 1248 (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989)). "[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Ferraro*, 284 F.3d at 1197 (internal quotation marks and citations omitted). The inquiry should be viewed from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Connor*, 490 U.S. at 396-97, 109 S.Ct. at 1872.

### III.    Analysis

Within Count One, Knudsen states two claims for violations of her Fourth Amendment rights – one for false arrest, and the other for excessive force. The claims are discussed in turn.

#### A.    Section 1983 false arrest claim

Knudsen does not dispute that Higgins was acting within his discretionary authority as a deputy sheriff during the events at issue in this suit. Thus, the burden shifts to Knudsen to show that qualified immunity is not appropriate. Knudsen was arrested on two charges: battery, and

resisting arrest without violence. Her claim is barred if probable cause to arrest existed as to either of these charges. *See Harvey v. City of Stuart*, 296 Fed. Appx. 824, 828 (11th Cir. 2008).

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998). Under Florida law, a battery occurs when a person "actually and intentionally touches or strikes another person against the will of the other." Fla. Stat. § 784.03(1)(a)(1).

Viewing the record evidence in the light most favorable to Knudsen, before placing her under arrest, Higgins knew several things that warranted a reasonable belief that Knudsen had committed the crime of battery on her husband. Higgins had been dispatched to Knudsen's house to investigate a domestic dispute.[1] He knew that he had been dispatched to the house several times before as a result of domestic disturbances. Most significant was his knowledge that Knudsen's husband had just told him that, during a verbal dispute, his wife had slammed her car's hatch down on his head. In addition, although Knudsen denies striking her husband, nothing in the record suggests Higgins had any reason to doubt what he had been told – such as, for example, knowledge of previous false accusations made by Knudsen's husband or a contrary story from a neighbor. Taking all this into account, the Court concludes that the husband's accusation and the other information known to Higgins at that point could have led a reasonable person to believe that Knudsen had committed the crime of battery.

---

[1] It is not clear from the record who placed the call reporting the dispute to the Sheriff's office, but its existence is undisputed.

Knudsen disputes that this is enough to support a finding of probable cause. She points out, correctly, that an arresting officer must conduct a "reasonable investigation" to establish probable cause. *Fronczak v. Pinellas County, Florida*, 270 Fed. Appx. 855, 858 (11th Cir. 2008). She complains that Higgins made no attempt to do a reasonable investigation, in that he did not do any investigating in between speaking to her husband and arresting her. But the existence of probable cause must be determined under the totality of the circumstances. Based on Knudsen's testimony, Higgins *was* attempting to conduct further investigation after speaking to her husband, by getting her side of the story. His attempt was interrupted by the altercation that led to her broken nose and subsequent trip to the hospital.

Aside from getting her side of the story, Knudsen does not point to any other investigation that an officer in Higgins's position should have performed prior to making an arrest, and none are apparent from the record. For example, there are no allegations that any third parties witnessed the dispute during which Knudsen allegedly struck her husband. (And, more particularly, there are no allegations that Higgins had any reason to believe there were any such witnesses.) Under these circumstances, Higgins's investigation was reasonable, and he had probable cause to arrest her for battery.

### B. Section 1983 Excessive Force Claim

The use of some degree of physical coercion or threat to effect an arrest or an investigatory stop is consistent with the Fourth Amendment's prohibition on unreasonable seizures. *Ferraro*, 284 F. 3d at 1197. The Supreme Court has held that, to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, including "the severity of the crime at issue, whether the suspect poses an immediate threat

to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* 490 U.S. at 396, 109 S.Ct. at 1872. The test is objective, not subjective. "An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 396, 109 S.Ct. at 1872. The calculation must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation. *Id.*

Keeping these principles in mind, the Court concludes that the record evidence, viewed in the light most favorable to Knudsen, does not demonstrate that Higgins is entitled to summary judgment. Up to a point just before Higgins performed the leg sweep on Knudsen, the evidence is not in dispute: According to the testimony of both Higgins and Knudsen, Knudsen had been involved in a loud dispute with her husband, part of which took place near her car. Someone reported the dispute to the Sheriff's office, and Higgins responded to the call, as he had done on previous occasions. When he arrived, Knudsen was outside her house, talking to her neighbor through the neighbor's doorway. Higgins entered Knudsen's house and spoke for a few minutes to her husband, who accused Knudsen of hitting him with her car's hatch.[2] Higgins went outside the house and crossed toward Knudsen – who was still in approximately the same location – and told

---

[2] Knudsen denies having hit her husband, and has no knowledge of the conversation between her husband and Higgins, but does not dispute Higgins's contention that her husband made the accusation.

her that he needed to speak to her.  She said "Okay," and began walking toward him, up the driveway.

Here the stories diverge.  Both Knudsen and Higgins agree that Knudsen walked past him, heading toward her open garage door.  Higgins says that he told her, several times, to stop. Knudsen testified that he only told her to stop as he was in the process of grabbing her arm and sweeping her legs out from under her.  For purposes of this motion, the Court must credit Knudsen's testimony and find that Higgins did not command Knudsen to stop before he seized her and took her to the ground.

There is almost no evidence suggesting that Knudsen posed a threat to Higgins or anyone else at the time Higgins took her down.  According to Higgins's testimony, he was six feet tall and weighed two hundred and thirty pounds on the day in question (Doc. 43-1 at 47); Knudsen was at least a foot shorter and a hundred pounds lighter.  Knudsen was not armed, did not appear to be enraged, and was not voicing threats against Higgins or anyone else as she walked (rather than ran) toward her garage.  Although Higgins had been called to Knudsen's house before, Higgins was aware that this was the first time her husband had accused her of attacking him.  It is true that the crime of which Knudsen had been accused – battery – is potentially very serious, one that warrants safety concerns on the part of an arresting officer.  But based on the information known to Higgins at the time, the allegation against Knudsen was not particularly serious.  Knudsen was only alleged to have hit her husband a single time, and Higgins testified that Knudsen's husband "didn't have any damage that could be seen" when he spoke to him.  (Doc. 43-1 at 45).

Higgins testified that he was trying to prevent Knudsen from reaching her garage out of concern for his safety and Knudsen's, as garages may contain weapons or other items that might

endanger an officer or Knudsen herself.[3] Knudsen agreed that she was trying to reach her garage, but said she was going there to sit down and talk with Higgins, which she had done on previous occasions when Higgins had been dispatched to her house. She testified that she was in the process of saying this to Higgins as she walked past him, but he took her down before she got more than a few words out. Higgins did not testify that he saw any dangerous items in the garage, either on the day at issue in this case or on previous occasions when he was at the house. Though not entirely clear from the record, it appears from Knudsen's testimony that she was still a significant distance – fifteen feet or more – away from the garage when Higgins took her down.

Based on the totality of the circumstances, and accepting Knudsen's testimony as true, the force used by Higgins was excessive and violated her Fourth Amendment rights. No party has cited a case that is on all fours with what Knudsen has testified to – *i.e.*, one where an officer, seeking to question a suspect who posed essentially no apparent threat and who had not been told to stop, simply tackled the person without warning. Nonetheless, the essential principles of excessive force jurisprudence are sufficiently clear for the Court to find that, as of May 5, 2008, it was well established that a takedown under such circumstances would constitute the use of excessive force, and a violation of the suspect's right to be free of unreasonable seizures. Accordingly, Higgins is not entitled to summary judgment on the Section 1983 excessive force claim. In addition, Defendant Johnson bases his own entitlement to summary judgment as to this

---

[3] Higgins said his assessment of the situation was affected by his knowledge that Knudsen had previously appeared to suffer from mental health issues. He had been present at Knudsen's house about a month earlier, when a different officer had had Knudsen involuntarily committed – or "Baker Acted," as the process is commonly known.

claim solely on a finding that Higgins did not violate Knudsen's Fourth Amendment rights.[4] (Doc. 49 at 7). As a result, Defendant Johnson is also not entitled to summary judgment in regard to this portion of Knudsen's Section 1983 claim.

### C. State Law Claims

Defendant Johnson argues that all of the state law claims against him are barred by Knudsen's failure to comply with Fla. Stat. § 768.28(6), which requires that tort claimants present their claims to the appropriate state agency at least six months before filing suit, unless the agency denies the claim before the six months have passed. Knudsen, who asserts that she did provide the notice of claim about five months (rather than the required six months) before filing suit, contends that Johnson has waived the point by failing to raise it in his answer or at any other time until the instant motion. Johnson responds that Fed.R.Civ.P. 12(h) permits him to raise the issue of failure to state a claim upon which relief may be granted all the way through trial. This is correct, as far as it goes; Johnson has the right to file a Rule 12(b)(6) motion. However, the Court finds that Johnson has waived the right to complain about receiving only five month's pre-suit notice, rather than six, by failing to raise the point until almost two years after the suit was filed. *See Kuper v. Perry*, 718 So. 2d 859 (Fla. 5th DCA 1998) (holding that waiver of presuit notice requirement may occur under certain circumstances, including where municipality has had notice and ample time to investigate claim and no practical purpose would be served by requiring additional notice).

---

[4] Johnson originally argued that Knudsen had failed to state a claim against his office in regard to the excessive force allegations in Count I. Knudsen pointed to her allegations in the Amended Complaint that the Sheriff's Office had approved of Higgins's conduct, thereby ratifying it and permitting the imposition of municipal liability. In response, Johnson abandoned that contention. (Doc. 49 at 7).

Florida Statute 768.28(9)(a) provides that an officer cannot be held personally liable for an injury resulting from an act committed in the course and scope of his employment unless the officer acted in bad faith, with a malicious purpose, or in a willful or wanton manner.  Higgins points out that there are no allegations in Knudsen's Amended Complaint (Doc. 25) that he acted in this fashion.  In her response, Knudsen does not dispute this contention.  Accordingly, the motion to dismiss will be granted as to Count II.

Under Florida law, an absence of probable cause is one of the elements of a malicious prosecution claim.  *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994).  And the existence of probable cause is an affirmative defense to a false arrest claim under Florida law.  *See, e.g., Metropolitan Dade County v. Norton*, 543 So. 2d 1301 (Fla. 1st DCA 1989), *rev. denied*, 551 So. 2d 462 (Fla. 1989).  Therefore, the Court's determination in Section IIIA that Higgins had probable cause to make an arrest is fatal to Knudsen's state-law false arrest (Count III) and malicious prosecution (Count IV) claims.

Intentional infliction of emotional distress, under Florida law, requires the plaintiff to establish four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.  *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. 2d DCA 2007).  The behavior claimed to constitute the intentional infliction of emotional distress must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  *Id.* (internal quotation omitted).  Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact.  *Id.*  According to Knudsen, the conduct at issue consisted of (1) intentionally or recklessly breaking her nose and (2) intentionally

setting out to wrongfully prosecute her. (Doc. 47 at 20). Having already ruled in the Defendants' favor as to the malicious prosecution, the Court finds that the remaining conduct is not outrageous or extreme enough to support a claim for intentional infliction of emotional distress. Even accepting Knudsen's testimony as true, the evidence in the record does not support a finding that Higgins's conduct "go[es] beyond all possible bounds of decency."

### IV. Conclusion

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss or in the Alternative for Summary Judgment (Doc. 40) is **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted in favor of the Defendants as to the false arrest claim in Count I, as well as Counts III through V. Count II is **DISMISSED WITHOUT PREJUDICE**. In all other respects, the motion is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 19, 2011.

_____
GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party